1

2

3

4

5

VICKI STEFANINI
PO BOX 54124
SAN JOSE CA 95154
Phone Number: 4082096581
VICKISTEFANINI@GMAIL.COM

FILED

DEC 26 2019

CLERK, SUSAN Y. SOONG
NORTHERN U.S. DISTRICT COURT
DISTRICT OF CALIFORNIA
SAN JOSE

6

7

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

8

VICKI STEFANINI,

Case Number: Case No. 5:18-cv-07051-NC

9

Plaintiff,

**PLAINTIFF OPPOSITION TO MOTION**
**FOR SUMMARY JUDGMENT**

10

vs.

[Santa Clara Cty. Super. Ct. Case No. 18-CV-333645]

11

12

13

HEWLETT PACKARD ENTERPRISE
COMPANY, STEPHEN CARLOCK and
DOES 1–50, inclusive,

FAC Filed:  December 24, 2019

14

Defendant(s).

15

16

17

18

December 24, 2019

19

20

21

*Re:    Stefanini v. HP Motion Summary Judgment*
*Case # 5:18-cv-07051-NC*

22

23

24

25

26

27

28

DECLARATION OF _____ IN SUPPORT OF

CASE NO. _____; PAGE __1__ OF __21__ [*JDC TEMPLATE Rev.2015*]

**TABLE OF CONTENTS**

Page

I. INTRODUCTION .............................................................. 3

II. FACTS ....................................................................... 4

    A. Plaintiff's Qualifications ........................................ 4

    B. Plaintiff Join HPE .............................................. 4

    C. Plaintiff Account Transfers...................................... 5

II. MOTION FOR SUMMARY JUDGMENT................................. 6, 7

    A. Employment Discrimination................................... 7, 8, 9

    B. Unfair Business Competition ................................. 9, 10, 11

    C. Wrongful Termination............................................ 11, 12, 13, 14, 15

    D. Retaliation....................................................... 11, 12, 13, 14, 15

    E. Interference with CFRA/FMLA Rights.......................... 11, 12, 13, 14, 15

    F. Failure to Pay Agreed Upon Wages........................... 16, 17, 18, 19, 20, 21

    G. Failure to Pay Wages Due upon Termination................... 16, 17, 18, 19, 20, 21

    H. Breach of Contract............................................... 16, 17, 18, 19, 20, 21

## I.  INTRODUCTION

Stefanini has been in the telecommunication networks industry for decades.  Initially, she began her career on the engineering side, helping companies like Comcast, AT&T, T-Mobile, Google, Salesforce, Adobe, Dropbox, Single Digits, Akamai, CenturyLink, Level 3 and Sprint build their networks.  Then she transitioned to the sales side of the business, leveraging her engineering background to manage accounts with these and other telecom companies.  Her technical knowledge allowed her to speak the same lingo as her customers in the sales arena. While at HP Inc following Split HPE, Stefanini picked up accounts for the largest telecom customers, such as Comcast, AT&T, BT Telecom, NTT as well as increased the revenue generated for HPE from smaller accounts such as Windstream, Frontier, Radisys and Savvis.

However, when a change in management occurred on her team on or about November, 2015, Stefanini's accomplishments were minimized. Although she had been working long hours to land key accounts, she was told that her male colleagues should handle certain accounts because those customers wanted a male and that by virtue of her sex, she was not a fit.  Key accounts that Stefanini had closed with projected revenues in excess of $1 million were transferred to her male colleagues.  This interfered with her ability to make her required sales numbers and resulted in her losing the commissions.

To make matters worse, Stefanini went out on medical leave as she battled cancer. The few accounts that had remained assigned to her prior to the leave, were promptly taken away from her after she returned from leave.  She was told she was underperforming and was being terminated as part of a Work Force Reduction (WFR).  However, prior to her accounts being transferred to underperforming male employees on her team, her performance had not been an

issue. Stefanini's termination was the result of gender and disability discrimination and has resulted in extensive damage to her.

## II. FACTS

### A.    Plaintiff's Qualifications

Stefanini holds a bachelor's degree in economics and engineering and a master's degree in business management.  Prior to joining HPE, Stefanini had over 20 years of sales experience at a mix of Fortune 500 companies and startups.  At these companies, she developed market strategies to increase sales and grow her customer base.  She consistently exceeded her quotas year after year.

This is also a profession where compensation is driven by commissions and allocation of credit for sales.  It is also a profession where individual employees incur expenses as a result of their travel, for which reimbursements are owed.  There is much room for error in calculating these credits, commissions and Stefanini had to take legal action on more than one occasion to enforce her rights and receive the compensation that was owed to her. She was successful in all of these matters that preceded her employment at HPE. The fact that Stefanini is an intelligent woman who knows her rights and will pursue what is rightfully owed to her should not discredit her in the present action.

### C.    Plaintiff Joins HPE

Plaintiff joins HP Inc in or about April, 2015, as a Global Account Manager. In the last two quarters of 2015 (her first two full quarters at HPE), Stefanini exceeded her sales quota by approximately 300%.

DECLARATION OF _____ IN SUPPORT OF

CASE NO. _____; PAGE 4 OF 21 [*JDC TEMPLATE Rev.2015*]

D.     Account Transfers

However, shortly after Stefanini's employment at HPE began, Steven Carlock ("Carlock") replaced Stefanini's previous manager. His interactions with Stefanini were markedly different from those of his predecessor. As Stefanini closed deals on some of her largest accounts, Carlock transferred those accounts to male colleagues on the team. Carlock informed Stefanini that he was doing this because the customer's culture a male was required to manage the account. Stefanini was the only female on her team, and although she resisted, the decision to transfer the accounts was outside of her control.

Four separate such transfers occurred. The first was on or about December 2015. Stefanini was informed that her Level 3, Windstream, Frontier and Zayo accounts would be transferred to one of her male peers. Stefanini protested, explaining that she had done a lot of revenue generation on these accounts. In fact, for some of the companies that had previously not been high revenue sources for HPE, Stefanini had been able to move the accounts from a lower HPE revenue Tier II to a higher Tier I.

The second transfer occurred on or about April 24, 2016. HPE management informed her that both Comcast and Wandering WiFi would be transferred. Stefanini approved the Wandering WiFi transfer since she had not expended much time on that account and they did not generate substantial revenues for HPE. However, she protested the transfer of Comcast, since it was one her highest revenue-generating accounts. She had increased the revenue on this account by over $1 million and the deals that she had negotiated hat were still coming in at that time were in excess of $10 million. But Carlock told her Comcast he wanted a male to lead that account. Stefanini was even told that she couldn't attend meetings that she had set up with the client unless she coordinated for one of her male colleagues to attend with her.

The third transfer occurred in July, 2016. This was for the accounts involving BT Telecom, CenturyLink, and Savvis. Thanks to Stefanini, the revenues coming in were high, but HPE management informed her that they had a high need to transfer the account to a more experienced male peer.

The fourth transfer occurred immediately after Stefanini returned from medical leave on or about October, 2016. This left her with no significant accounts to manage.

**III. MOTION FOR SUMMARY JUDGMENT**

Plaintiff opposes Hewlett Packard Enterprise (HPE) Motion for Summary Judgment. Defendant's motion should fail because there are substantial triable issues of material fact at issue heirin. Therefore, Defendant is not entitled to judgment as a matter of law. Rather, Plaintiff is entitled to put her case in front of a jury.

Summary Judgment may only be granted where there are no material facts in dispute and the moving party is entitled to judgment as the matter of the law. Anderson v. Liberty Lobby Inc., 4 U.S. 242,249 (1986); See also ray v. Ropes & Gray LLP, 99 F .3d 99, 116 (1st Cir 2015) (courts exercise "particular caution" when considering an employer's motion for summary judgment raising issues of pretext, motives and intent); Frances v Johnson 95 F .3d 11 0, 11 5 (9th Cir. 2015) (It does not take much for a Plaintiff in discrimination case to overcome summary judgment motion). The court must withdraw all reasonable interference in favor of nonmoving party. Eatman Kodak Co. v. Image Technical Services, Inc., 504 U.S. 451 (1992). Credibility determinations, the weighing evidence, and drawing of legitimate interference from the facts and jury function. Anderson V. Liberty Lobby, 4 U.S. at. 255. A finding of good cause for termination requires A reasonable conclusion supported by substantial evidence gathered through

an adequate investigation that includes notice of claimed misconduct and a chance for the employee to respond. Cotran V. Rollins Hudig Hall Int'l

Summary Judgment is improper as this case turns on multiple disputed material facts and determination of reasonableness, credibility, motive and intent., Inc 1 Cal. 4 th 93 (1998), emphasis added.

## A. EMPLOYMENT DISCRIMINATION BASED ON GENDER AND DISABILITY (FEHA)

There are disputed issues of material fact as to Plaintiff claim for Gender and Disability. Defendant terminated Plaintiff in Retaliation based on false, biased and to cover up preferential treatment to specific customers which is a violation of HPE Standards of Business Conduct Policy. There is no legal basis to grant Summary Judgment. Based on the foregoing, the Plaintiff request that the Defendants Motion for Summary Judgement be denied in it's entirety

Defendant discriminated against Stefanini based on gender and disability. Defendant retaliated against Plaintiff for seeking protected medical leave by terminate her. As a proximate result of Defendants' willful, knowing and intentional violation of CFRA, Plaintiff has sustained economic losses, humiliation, emotional stress, mental and physical pain on and anguish. The person who committed unlawful acts described herein were officers, directors and/or managing agents of Defendants acting within the scope of their employment. Morever Defendants aided, abetted, coerced this discrimination. The unlawful acts described herein were committed with oppression, fraud, malice and were authorized by such officers, directors and/or managing agents. Plaintiff suffered lost wages and health problems in which her doctor advised her she needed surgery. The evidence is clear that Plaintiff received different treatment based on her gender and medical condition. Mr Carlock transferred several of her accounts to male co-workers on sales team. As a result she was paid significantly less commission. In approximately November 2015 a problem happened with MyComp Internal Sales Software Tool due to Hewlett Packard Company Split to Hewlett Packard Enterprise (HPE) and Hewlett Packard Inc (HP). In

DECLARATION OF _____ IN SUPPORT OF

CASE NO. _____; PAGE 7 OF 21 [*JDC TEMPLATE Rev.2015*]

November 2015 Plaintiff's new manager was Stephen Carlock. Although this was a different business organization within North American SP Team Plaintiff was asked due to her expertise in cloud and HPE company lacking resources to essentially perform both her old job and new job duties. In Plaintiff previous position she managed large key accounts such as AT&T, Google, Comcast, Salesforce, CenturyLink. Some of these accounts were part of her new position. Mr. Carlock started ordering her to transfer her accounts to male peers once the revenue was showing close to $1,000,000 or more. Plaintiff was managing Comcast account for both Cloud and Networking. With Comcast being a large account Plaintiff requested local engineering support. Plaintiff experienced disparate treatment within Mr. Carlock's team. On March 30, 2016 Plaintiff was subject to gender biased comments by Mr. Carlock. Plaintiff was told the Comcast account needed a male colleague present at the meeting in order to attend the meetings in March 2016. Plaintiff setup the Comcast meetings with Sr. VPs based on her relationships prior to joining HPE. Plaintiff was told if she did have a male colleague attend Comcast meetings' she would need to cancel them. Mr. Carlock told Stefanini a male was better suited to manage the account. Mr. Carlock told Stefanini he would be replacing her with one of her male co-workers. On 4/28/2016 Mr. Carlock removed Plaintiff of Comcast account and transferred key account to male coworker while Mr. Carlock required Plaintiff to stay on the account to help close sales that would benefit her male coworker.

- Misconduct for discharge was nearly identical to that engaged by an employee outside the protected class whom the employer retained Nix vs WLYC Radio/Rahall Communications, 738 F.2d 1181, 1184 (11th Cir. 1984).

- Established prima faci case of discriminatory discharge, the burden of production shifts to the employer to produce evidence of a valid, non-discriminatory reason for the discharge. This is a burden of production not a burden of proof

- Employer produces carries burden of production, the presumption of discriminatory discharge raised by prima faci case is rebutted. The employee must then establish, by preponderance of evidence that the employer stated non-discriminatory reason for discharge was a mere pretext

A. Adrian Hurel Deposition, Exhibit A
(P. 19 line 17-25), (P. 20 line 1-8), (P. 33 line 4 -15)
Exhibit 10 Standards Business Conduct Policy

DECLARATION OF _____ IN SUPPORT OF

CASE NO. _____; PAGE _8_ OF_21_ [JDC TEMPLATE Rev.2015]

Exhibit 34 (line 2)
Exhibit 36 (line 10 -18)

B. Stephen Carlock Deposition, Exhibit B
(P. 33 line 1-12), (P. 36 line 5-19)

C. Robert Oliver Declaration, Exhibit C1 (P.2 line1-4)

D. Robert Oliver Deposition, Exhibit C2
(P. 39-41 line 1-25), (P. 42 line 1-15), (P. 44 line 12-25), (P. 45 line 1-25), (P. 49 line 13-25), (P. 55 line 1-25), (P. 59 line 9-17), (P. 61 line 18-23), (P. 68 line 1-25), (P. 69 line 1-25), (P. 74 line 13-25), (P. 77 line 1-25), (P. 80 line 1-25), (P. 81 line 1-25), (P. 87 line 5-25), (P. 95 line 1-25), (P. 97 line 1-25), (P. 100 line 18-25)
Vicki Stefanini Deposition, Exhibit D
(P. 17 line 5-13), (P. 27 line 1-13), (P. 33 line 4 -15), (P. 57 line 8 -25), (P. 64 line 1-25), (P. 82 line 1-25), (P. 83 line 1-25)

## B. UNFAIR BUSINESS COMPETITION

Summary Judgement on the issue is innappropriate under these circumstances. Evident that HP Enterprise manager was violating HP Enterpise Standards of Business Conduct Policies and discriminated against Plaintiff due to her gender and disability.

Plaintiff reported suspected illegal behavior to be investigated. Defendants have not established good cause to terminate Plaintiff employment as a matter of law because they have failed to show actions against Plaintiff were reasonable or true. Morever Defendant "falsified records" and kept "off the book discounts" to give preferential treatment to specific customers Guestek, AT&T which is a violation of HP Enterprise Standards of Business Conduct. Defendant refused to offer customer discounts to Plaintiff making it difficult for her to close business. Defendant denied discounts to Plaintiff however once she was forced to transfer specific accounts to male employees the discounts were approved.

DECLARATION OF _____ IN SUPPORT OF

On 10/17/2016 Mr. Carlock put Plaintiff on Work Force Reduction (WFR). Plaintiff let Human Resources know she did not accept, she did not sign Severance package on 10/28/2016 for $53,149.03 due to her concern of over $10,000,000 unpaid commission.  Plaintiff was selected for WFR in Retaliation for taking CFRA/FMLA protected medical leave and for complaining of management violation of HPE Standards of Business Conduct. Criteria for HPE WFR was based on (1) Performance, (2) Sales Experience and (3) Education. Plaintiff ranked higher than Male coworker who retained his position in all 3 areas. Mr. Carlock forced Plaintiff to transfer 80% of her accounts to male coworker and then chose her for HPE Work Force Reduction.

COMPARISION BETWEEN STEFANINI /MALE RETAINED POSITION

Quota for 2016
Male at 10%
Stefanini at 300%

Experience
Male, 2 year degree
Stefanini, Master's degree

Sales Experience
Male, 16 years
Stefanini 21 years

     A. Adrian Hurel Deposition, Exhibit A
     (P. 19 line 17-25), (P. 20 line 1-8), (P. 33 line 4 -15)
     Exhibit 10 Standards Business Conduct Policy
     Exhibit 34 (line 2)
     Exhibit 36 (line 10 -18)

     B. Stephen Carlock Deposition, Exhibit B
     (P. 33 line 1-12), (P. 36 line 5-19)

     C.Robert Oliver Declaration, Exhibit C1 (P.2 line1-4)

     D. Robert Oliver Deposition, Exhibit C2
     (P. 39-41 line 1-25), (P. 42 line 1-15), (P. 44 line 12-25), (P. 45 line 1-25), (P. 49 line 13-25), (P. 55 line 1-25), (P. 59 line 9-17), (P. 61 line 18-23), (P. 68 line 1-25), (P. 69 line 1-

25), (P. 74 line 13-25), (P. 77 line 1-25), (P. 80 line 1-25), (P. 81 line 1-25), (P. 87 line 5-25), (P. 95 line 1-25), (P. 97 line 1-25), (P. 100 line 18-25)

Vicki Stefanini Deposition, Exhibit D

(P. 17 line 5-13), (P. 27 line 1-13), (P. 33 line 4 -15), (P. 57 line 8 -25), (P. 64 line 1-25), (P. 82 line 1-25), (P. 83 line 1-25)

### C. WRONGFULLY TERMINATION IN VIOLATION PUBLIC POLICY
### D. RETALIATION FOR TAKING CFRA RIGHTS GOVT CODE 12945
### E. INTERFERENCE WITH FMLA RIGHTS

There are disputed issues of material fact as to the amount of wages owed and commissions unpaid due to account transfers to male employees and MyComp Faulty Sales Compensation Software. There is no legal basis to grant Summary Judgment. Based on the foregoing, the Plaintiff request that the Defendants Motion for Summary Judgement be denied in it's entirety

Plaintiff filed complaint with DFEH California Dept of Fair Employment and Housing, Plaintiff received a Right To Sue from DFEH. HPE owed a duty to Plaintiff to prevent discrimination from occurring against her in their employment relationship. Within a few days after HPE's finding of "No Discrimination" from complaint to Human Resources she was laid off just after returning from medical leave between 3/25-3/29/2016 of her ongoing cancer condition and her need to take medical leave as well as concurrent treatment for anxiety. Mr. Carlock instigation of performance reviews of Plaintiff, based on false pretenses of underperformance in sales, all while Mr. Carlock continued to interfefe with Plaintiff's ability to work successfully woth current and potential customers of HP by placing roadblocks to her performance by providing Plaintiff's male colleagues assistance and transferring her revenue generating accounts to her male colleagues.

DECLARATION OF _____ IN SUPPORT OF

Plaintiff suffered from employment discrimination based on Gender (FEHA) where HPE interfered with my FMLA rights and retaliated against me for taking protected medical leave. I suffered lost wages and discrimination based on my health problems in which my doctor advised me I needed surgery. The evidence is clear that Plaintiff received different treatment based on my gender and medical condition. In November 2015 my new manager Stephen Carlock although this was a different business organization Plaintiff was asked due to my expertise in cloud and company lacking resources to essentially perform both her old job and new job. Plaintiff's previous position she managed large key accounts such as Comcast, Salesforce, CenturyLink these very same accounts were part of my new position however Mr. Carlock ordered her to transfer the account once the revenue was showing close to $1,000,000 or more to my male peers. Plaintiff has sustained humiliation, emotional distress, mental and physical pain and anguish.

In order to show employment discrimination based on gender, the employee must show that (1) she is the member of a protected class; (2) she was qualified for her position and was satisfactorily performing her job duties; (3) she experienced an adverse employment action; and (4) other similarly situation employees outsider of her protected class were treated more favorably.  Hawn v. Executive Jet Mgmt., Inc., 615 F.3d 1151, 1156 (9th Cir. 2010) (citing Peterson v. Hewlett-Packard Co., 358 F.3d 599, 603 (9th Cir. 2004)).  Stefanini will be able to establish that based on the facts noted above, as well as additional facts she anticipates will be revealed through discovery.  Stefanini expects that her personnel file will show her qualifications and the timing of the adverse action against her relative to her complaints of gender discrimination.  She also expects that discovery into commission earnings by her relative to her male colleagues on her team will also support her claim.  As such, the burden will then shift to

HPE to show that there was a legitimate reason for the adverse employment action. Curley v. City of N. Las Vegas, 772 F.3d 629, 632 (9th Cir. 2014). HPE has attempted to do this by asserting that Stefanini was underperforming. However, Stefanini will be able to show that her performance was not accurately recorded. The fact that MyComp was riddled with errors, but that her manager only corrected those errors for her male colleagues, and not her supports her position that she was not underperforming. In addition, the fact that her accounts that she had worked up were transferred to her male colleagues right before the commissions could be assigned, but after they had been earned by her, will further show that her performance was not accurately recorded. Finally, the impact of her medical leave on her sales performance will also be noted. As such, Stefanini will be able to show that she was the subject of gender-based employment discrimination.

March 22, "Customer wants a male on the account"

March 29 "Comcast need a male to attend VP meeting that were setup by Stefanini due to her relationship. HP was unable to secure meetings with Comcast VPs without Stefanini's relationship in the account."

Although Stefanini was on medical leave for approximately three (3) months in 2016 and was not working on her sales accounts during that time, her overall production for the fiscal year exceeded quota. Regardless, her leave status is not something the employer can legally consider when selecting candidates for layoff. Instead, seniority, performance, education and other such criteria are to be considered. Stefanini believes that had these factors been considered, she would not have been laid off because other candidates on her team had less experience and performance that was not as good as hers; those candidates should have been prioritized over her for a Work Force Reduction. Plaintiff managing Comcast account for Cloud and Networking I

DECLARATION OF _____ IN SUPPORT OF

CASE NO. _____; PAGE 13 OF 21 [*JDC TEMPLATE Rev.2015*]

requested local engineering support. Once account showing large revenue opportunities manager

transferred to male peer. Culture within Mr. Carlock sales team disparate treatment to females.

On March 30, 2016 I was subject to gender biased comment by Mr. Carlock. The Comcast

account needed male approval or she could not attend the meetings that Plaintiff setup with

Comcast. Mr. Carlock told me a male was better suited to manage the account and that women

are not a fit. He then told me he would be replacing me with a male co-worker. Mr. Carlock

instigation of performance reviews. Where evidence is not available the 3 Step procedure

McDonnell Douglas Corp vs Green 411 U.S. 792, 802, 93 S. Ct. 1817 (1973). Once the above

evidence have been established a primas faci case discrimination exist. Then puts on employer

for reasons for adverse to present evidence for adverse employment action. This is a burden of

production not a burden of proof. If employer shows proof then employee must show employer

non-discriminatory reason for employment action was a mere pretext. To prove disparate

treatment under Title VII, the employee must show that the employer acted with discriminatory

purpose.

The case Johnson v. United Cerebral Palsy/Spastic Children's Foundation of Los Angeles et al.,

1 3 Cat App. 4th 40 (2009) (Cerebal Palsy) which distinguishes the King case and reversed

Summary Judgment against Plaintiff who brought a discrimination claim after termination. The

claimant issued declarations from witnesses to substantiate claims. The court considered the

witness declaration of discrimination especially persuasive and found that and found that, when

taken together with other factors in the case the proffered evidence warranted reversal of the

Summary Judgment (id at p. 58). In this case the Plaintiff has easily shown that she meets the

first three factors for gender discrimination under FEHA (1) member of protected class, (2)

Performing competently positions they held at HPE and (3) were terminated. Under Cerebral

DECLARATION OF _____ IN SUPPORT OF

Palsy, the Plaintiff has furthermore established a record of evidencing discriminatory intent sufficient to withstand Summary Judgment. Stefanini has set forth records demonstrating that Mr. Carlock harassed and gave male employees preferential treatment for the purposes of achieving her termination.

A.  Adrian Hurel Deposition, Exhibit A

   (P. 19 line 17-25), (P. 20 line 1-8), (P. 33 line 4 -15)

   Exhibit 10 HPE Standards of Business Conduct (P. 1-23)

   Exhibit 34, (line 2)

   Exhibit 36, (line 10 -18)

B.  Stephen Carlock Deposition, Exhibit B

   (P. 33 line 1-12), (P. 36 line 5-19)

   Exhibit 7 MyComp Errors Single Digits Account

   (P.1, line 1-14)

   Exhibit 8 MyComp Faulty Software Tool showing unpaid commissions for PO's $4,148,888.00 Radysis deals closed $237,400.00, $172,763.00, $23,472.00

C.  Robert Oliver Declaration, Exhibit C1

   (P.2 line1-4)

D.  Robert Oliver Deposition, Exhibit C2
   (P. 39-41 line 1-25), (P. 42 line 1-15), (P. 44 line 12-25), (P. 45 line 1-25), (P. 49 line 13-25), (P. 55 line 1-25), (P. 59 line 9-17), (P. 61 line 18-23), (P. 68 line 1-25), (P. 69 line 1-25), (P. 74 line 13-25), (P. 77 line 1-25), (P. 80 line 1-25), (P. 81 line 1-25), (P. 87 line 5-25), (P. 95 line 1-25), (P. 97 line 1-25), (P. 100 line 18-25)

   Exhibit B MyComp Errors

   Exhibit 33, Exhibit 35, Exhibit 36, Exhibit 37

E.  Vicki Stefanini Deposition, Exhibit D
   (P. 17 line 5-13), (P. 27 line 1-13), (P. 33 line 4 -15), (P. 57 line 8 -25), (P. 64 line 1-25), (P. 82 line 1-25), (P. 83 line 1-25)

**F. Failure to Pay Agreed Upon Wages**
**G. Failure to Pay Wages Due Upon Termination**
**H. Breach of Contract**

There are numerous items of Material Fact of proof by a preponderance of evidence that HPE employer intentionally discriminated against Plaintiff. Defendant failed to pay commissions owed and did not provide a timely final paycheck at time of termination. Commissions earned by Plaintiff and acknowleged by Defendant HPE, however not include in final paycheck. Commissions earned by Plaintiff and not acknowledged by Defendant HPE, because Plaintiff MyComp numbers were inaccurate, Commissions that should hve been credited to Plaintiff, but were diverted to a male employee on Plaintiff same sales team. HPE violated law of Fair Labor Standards for unpaid wages and commissions. Informed manager Mr. Carlock regarding MyComp inaccuracies complained on March 30, 2016, April 2, 2016, May 6, 2016, May 18, 2016.

Although Carlock made the MyComp corrections for Stefanini's male colleagues, he did not do so for her.  The problem that resulted from this is two-fold: (1) Stefanini is still owed commissions that she earned during her employment, and (2) the incorrect commission calculation directly impacted the assessment of Stefanini's performance.  Stefanini believes that the total commissions she is owed is $577,500.  This is based on the deals she closed, including those which Carlock transferred to Stefanini's male colleagues before the commissions were paid out, as well as those commissions which were improperly calculated in MyComp.  It does not, however, account for any of the partner commissions owed to Stefanini.  A channel sale or partner sale occurs when an HPE customer buys from a channel and the sale is passed through HPE.  The HPE sales manager is supposed to get credit for these sales, but are harder to track and due to HPE's poor accounting and channel alignment after the 2015 split from HP, Inc. Prior to Plaintiff's role at HP Enterprise  their were no significant Networking or Cloud deals closed showing very minimal revenue. Plaintiff knew with her relationships she could get that to change. In November 2015 Radisys, Windstream, Level 3 Communications, account grew to $2,000,000 in networking revenue then manager took her off the account. Plaintiff asked specifically to keep Comcast account because she knew she could generate significant revenue

DECLARATION OF _____ IN SUPPORT OF

based on her relationships. Plaintiff brought in the right relationships with decision makers at CXO Exec and VPs.  Plaintiff had been working the Comcast account for 8 months . As all fortune 500 accounts at HP Enterprise may encompass an extended sales/engineering team of 10-20 people per account. On on Feburay 9, 2016 Plaintiff requested engineering resources from Stephen Carlock ans Ken Meir as she needed technical support. On March 2, 2019 was given (1) sales person and (2) engineers for support on Comcast account.

MyComp sales earning tool affected all of Hewlett Packard Sales Organization Worldwide. Mr. Carlock corrected MyComp inaccurate commission pay for male employees on her sales team but failed to correct hers. According to the report from Business Insider May 25, 2017 initially HPE Leadership said "Our salespeople have been paid accurately and on time, and it would be wholly inaccurate to suggest otherwise. While our recent separation activities have contributed to challenges with systems used by our sales force to have visibility. While our recent separation activities have contributed to challenges with the systems used by our sales force to have visibility into their compensation, these issues have no impact on their actual compensation. As a result of the challenges we have given impacted salespeople a choice between remaining on our draw program or moving to incentive compensation until all of these issues have been addressed." "Hewlett Packard Enterprise has apologized to thousands of employees in its North American sales organization for ongoing issues with the internal software that tracks their sales and calculates their commissions. In an all-hands meeting on April 27, VP and COO of HPE's Americas Enterprise Group Cheryl Brown detailed the issue with the software, called MyComp, according to a recording of the call heard by <u>Business Insider</u>. Brown said links between orders and customer account names were disconnected. HPE insists that salespeople have been paid; it's just the reporting in the software that is incorrect. HPE salespeople told Business Insider that HPE's software is having a problem tracking which salesperson gets credit for the sale, many of which happen through distributors and resellers. Aside from being an embarrassing issue for HPE externally, it has been a nightmare for some employees "whom have had to borrow money from HPE to make ends meet," the report said. Brown told salespeople that they would have the

option to borrow against their anticipated commissions through June. Some salespeople have even left the company due to the inconvenience, according to Business Insider."

A.  Stephen Carlock Deposition

Exhibit 7 Email MyComp Error Reporting Single Digits

(P. 1, line 1-14)

Exhibit 8 Commissions Unpaid $4,148,888.00 Radisys deals closed $237,400.00, $172,763.00, $23,472.00 closed

(P. 1, line 1-33)

B.  Arian Hurel Deposition

Exhibit 7 Business Insider MyComp Sales Software Issues

(P. 1, line 1-20), (P. 2 line 1-9)

Exhibit 8 $4,148,888 Unpaid Commissions AT&T, Windstream, Level 3, Frontier, Comcast, BT, Salesforce, Autodesk, Dealertrack deals closed

(P.1, line 1-33)

Exhibit 17 MyComp Errors showing unpaid commissions of $237,400.00 unpaid commissions for Radisys deal

(P.1)

Exhibit 20 MyComp Faulty Software Tool showing unpaid commissions $27,265,068.00 for Accounts and Partners

(P. 1-5)

Exhibit 15 MyComp Unerreporting Numbers Were Wrong

(P. 1-2)

HPE statements are false P.2 paragraph 2 stating "Stefanini transitions from selling HP Networking (HPN) . As a member of Carlock's team Stefanini was required to follow a Service Provider based sales model, which required her to make larger sales to a smaller group of bigger companies." Stefanini's responsibilities was a much higher revenue respsonsibility within HPN

DECLARATION OF _____ IN SUPPORT OF

CASE NO. _____; PAGE _18_ OF _21_ [*JDC TEMPLATE Rev.2015*]

included managing globally HPE Stratgegic Fortune 500 accounts to include AT&T, Comcast, Radysis, Google, NTT, Salesforce.com, Akamai, CenturyLink, Adobe etc. In fact the accounts under her new manager Stephen Carlock was smaller sales to a smaller group of accounts. As a result of Stefanini's proven success and performance she was asked by HP leadership team to continue to manage her key accounts from HPN organization and approval was given for these accounts to be paid commisisons under Stephen Carlock Srevcie provider team.

The key documents are "the sales letter," the "sales plan" and all the "policies" related to compensation. All the conditions have to be met for the commission to be earned. Company reserves the right to change or cancel the plan on 30-day's notice. I am providing by attachment the "sales letter," and "sales plan". The current sales policy is effective from November 1, 2015 until modified.  [HPE's fiscal year ends 10-31-16]

- A "sales letter" spells out the performance expectations for the individual sales person under the applicable "Sales Plan."
- 'TIA' is the target incentive amount.  This TIA is adjusted for weighted metrics.
- The "slope" is the rate of increase over the base sales volume. 1:1 for TIA, and an "accelerator" slope for over TIA.  Standard accelerator is 2.5x. [The accelerator applies to sales over quota].
- These terms apply across product lines and quota goals for that product line.  The sales letter determines the actual % incentives and slopes applicable for a particular Sales Manager.

1) Upon meeting TIA for fiscal year 2016 at assigned quota $3,315,022, Ms. Stefanini earned $100,000 in commissions.  This converts to a TIA of 3% payable at whatever volume of gross sales she made below $3,315,022.

2) Over $3,315,022 a 2.5% "accelerator" was to apply. This is the new "slope."  The slope is 3% plus 2.5% or 5.5%.

3) Actual Sales ending 10/31/2016 are summarized as $13,725,314 sold direct and through distributors

DECLARATION OF _____ IN SUPPORT OF

CASE NO. _____; PAGE _19_ OF _21_ [JDC TEMPLATE Rev.2015]

HPE MyComp is defined as the Computer Software Tool used to track sales commissions through partners and distributors.

Mr. Carlock continued to knowingly use Plaintiff incorrect MyComp numbers to justify allegations that the Plaintiff was underperforming. MyComp Stefanini coomplained about Mycomp errors Carlock fixed male employees howver refused to fix Stefanini's. Please refer to Exhibit showing proof of POs clossed by Stefanini and HPE non-payment of commission to include Radysis,  .HPE failed to pay Stefanini her comissions due in accordance with HPE Sales Compensation Policy and conrtinues to falsify information. Plaintiff MyComp numbers were never corrrected resulting in underperforming of wages Palintiff earned and the underpayment of wages to Plaintiff.

HP Enterprise Company's argument not only wrongly implies that there would be no waiver or modification or other contract sales comisisons as a matter of law, it wrongly that non-lawyer salespeople like Stefanini should have known that at the time, rendering their reliance unreasonable. Surely someone in Stefanini's shoes can reasonably rely on the HPE MyComp Software Compensation Tool used companywide to payout correct commisions owed without undertaking a legal analysis of whether the company's used to determine HPE revenue's and commisisons would have resulted showing inacurate earnings for HPE companywide. As a matter of California law, a question that is not answered even today. Why should HPE take provledge and not pay ermployees due to company faulty pay systems?

Plaintiff wage claims (failure to pay comisisons, failue to provide accurate pay stubs and faliure to pay all wages upon termination) are based on numericous hours of work. Employees must me paid agreed upon wage (Cal Labor Code 119, 510), Paystubs must accurately reflect the time worked for the period (cal Labor Coe 226). Upon termination, Defendants were obligated to

DECLARATION OF _____ IN SUPPORT OF

immediately pay Plaintiff all wages owed (Cal Labor Code 201 – 203). It is undisputed that HPE witheld wages upon termination and comissions were not paid due to MyComp Faulty Software Compensation Tool.

There are disputed issues of material fact as to the amount of wages owed and commissions unpaid due to account transfers to male employees and MyComp Faulty Sales Compensation Software. There is no legal basis to grant Summary Judgment

A.  Arian Hurel Deposition
    Exhibit 4
    (P. 1, line 1-8)
    Exhibit 6
    (P. 1, line 1-21)
    (P.2, line 1-27)
    (P.19, line 17-25)
    (P.20, line 1-8)

B.  Stephen Carlock Deposition
    (P. 5, line 1-7)
    (P. 6, line 1-8, line 20-25)
    (P. 32, line 23-25)
    (P. 33, line 1-12)
    (P. 36, line 5-19)
    (P. 65, line 11-18)
    Exhibit 13
    (P.1-3)

C.  Vicki Stefanini Deposition
    (P. 22, line 7-25)
    (P. 23, line 14-25)
    (P. 24, line 1-6)
    (P. 25, line 4-10)
    (P. 27, line 9-13)

Date: December 24, 2019          Address: PO BOX 54124, SAN JOSE, CA 95154

Phone Number: 408-887-5943

Signature: _____

Printed name:  VICKI STEFANINI

DECLARATION OF _____ IN SUPPORT OF

CASE NO. _____ ; PAGE 21 OF 21 [*JDC TEMPLATE Rev.2015*]