UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICKI STEFANINI,<br><br>  Plaintiff,<br><br>  v.<br><br>HEWLETT PACKARD ENTERPRISE COMPANY,<br><br>  Defendant. | Case No. 18-cv-07051-NC<br><br>**ORDER GRANTING HPE'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 101 |

In this employment discrimination case, defendant Hewlett Packard Enterprise Company moves for summary judgment over all twelve of plaintiff Vicki Stefanini's claims. The Court FINDS that Ms. Stefanini has not provided sufficient admissible evidence to create a genuine dispute of material fact as to any of her claims. Stefanini has failed to make a prima facie case for gender discrimination, retaliation, or interference with FMLA rights. She has also failed to provide facts in support of her wrongful termination, breach of contract, failure to pay wages, and unfair competition claims. As such, the Court GRANTS HPE's motion for summary judgment as to all of Ms. Stefanini's claims and DISMISSES the case.

**I. BACKGROUND**

 **A. Undisputed Facts**

  Vicki Stefanini worked in sales at HPE for about one and a half years. She was initially hired by HPE (then "Hewlett-Packard Company," or "HP") in March 2015. Dkt.

No. 101, Decl. of Jeffrey Ho at ¶ 2. In the fall of that year, HP acquired Aruba Wireless Networks and split into HPE and Hewlett Packard, Inc. Dkt. No. 101, Decl. of Stephen Carlock at ¶ 3. HPE combined HP and Aruba sales teams to operate Aruba as a division of HPE. *Id*. Stefanini's HP sales team, led by Robert Ruiz, was transferred to a new combined HP-Aruba sales team led by Aruba salesperson Stephen Carlock. *Id*.

On the new team, Stefanini was responsible for selling both HP products and Aruba products. *Id*. at ¶ 6. Carlock required his team members to update him monthly on sales forecasts and to maintain certain ratios of "Upside," "Pipeline," and "Committed" sales (essentially, prospective sales at varying levels of commitment). *Id*. at ¶ 13.

In February 2016, Carlock emailed his manager to express concerns about Stefanini's job performance and to discuss how to start the process of terminating her. *Id*. at ¶ 20; Ho Decl. at ¶ 2x, Exh. 6. The HR department recommended that Carlock first provide her with a written warning and place her on a performance improvement plan. *Id*. Carlock also contacted a colleague who led a regional pre-sale consulting team to see if Stefanini could join that team. *Id*. Stefanini was offered a place on that team, but she declined. Carlock Decl. at ¶ 22–23.

Carlock issued a written warning and performance improvement plan for Stefanini in April 2016. *Id*. at ¶ 25, Ex. B; Stefanini Depo, Ex. 19. The warning stated that Stefanini had continued to focus only on HP products rather than learning the new Aruba products that she was now responsible to sell. *Id*. It stated that Carlock had requested Stefanini take a class about the Aruba products but that she had not attended either of two classes available since his request. *Id*. It also stated that Stefanini had "not generated the expected pipeline and thus revenue expected," that she "achieved less than 25% quota" in Q1 and Q2, that her prospective sales opportunities were under the required ratio, and that she had recently lost a large sales opportunity. *Id*. The performance improvement plan required that Stefanini improve her prospective sale ratios, meet with executives about her accounts, complete trainings in Aruba products, and meet with Carlock weekly to review her progress. Carlock Decl. at ¶ 25, Ex. B. At this same meeting, Carlock informed

Stefanini that he was transferring one of her accounts, Comcast, to another team member. Stefanini Depo. at 122:8–123:14.

HPE uses software called MyComp to track salespeople's sales credits, quotas, and commissions. Foley Decl. at ¶ 4. Individual salespeople maintain their own records and are responsible for reporting errors in MyComp. Dkt. No. 101, Declaration of Adrian Hurel at ¶ 4, Ex. 1. In May 2016, Stefanini reported MyComp issues to Carlock. Stefanini Depo. Ex. 44. Carlock connected her to the Sales Compensation department for assistance. Foley Decl. at ¶ 2, Ex. 1. Carlock emailed his whole team on June 1, 2016, and asked them to compile any MyComp errors into a spreadsheet, writing, "DO NOT SEND ME EMAILS one at a time as you find stuff." Stefanini Depo. Ex. 43.

Also in May 2016, Stefanini emailed Dominic Orr, the former President and CEO of Aruba, stating that she was "being treated differently by manager Stephen Carlock due to being part of a protected class." Stefanini Depo. Ex. 32. Orr forwarded her email to HR and HR began an investigation. Ho Decl. at ¶ 2e, Ex. 7. The investigation included meetings between HR and Stefanini, interviews with members of Carlock and his sales team, and document review. *Id*. HR concluded that the complaint had no substance. *Id.*

Around the same time, HPE initiated a company-wide workforce reduction and asked Carlock to rank his team members based on performance in order to reduce his team by two positions. Carlock Depo. at ¶ 29, 30. On May 23, 2016, Carlock sent his manager a ranked list of his team members, ranking Stefanini as one of the two lowest performers. *Id*. at ¶ 31, 32.

Later in May 2016, Stefanini requested a medical leave of absence based on a doctor's recommendation. Stefanini Depo. Ex. 41. Her leave was granted, and set to run from July 18 through October 9, 2016. Ho Decl. at ¶ 2f, Ex. 8. Because she was on leave when the workforce reduction was implemented, HPE did not inform Stefanini that she was being laid off until October 17, 2016. Carlock Decl. at ¶ 31, 23; Foley Decl. at ¶ 2, Ex. 1; Stefanini Depo. Ex. 46. Her last day with HPE was October 28, 2016. *Id*. Her position was never backfilled. Carlock Decl. at ¶ 37.

3

### B. Procedural History

Stefanini's complaint against HPE brings twelve claims: (1) employment discrimination based on gender under the Fair Employment and Housing Act (FEHA); (2) failure to prevent gender discrimination under FEHA; (3) wrongful termination; (4) retaliation for exercising California Family Rights Act (CFRA) rights; (5) interference with Family and Medical Leave Act (FMLA) rights; (6) retaliation; (7) breach of contract; (8) breach of the covenant of good faith and fair dealing; (9) failure to pay agreed-upon wages; (10) failure to pay wages due upon termination; (11) failure to reimburse business expenses; and (12) unfair competition. Dkt. No. 25. The Court held a hearing on HPE's motion for summary judgment. Dkt. No. 111. At the hearing, the Court confirmed with Ms. Stefanini that, as she discussed in her deposition, she intended to voluntarily dismiss her claim for failure to reimburse business expenses. *Id*. The Court also indicated to Ms. Stefanini that it intended to grant HPE's motion for summary judgment as to her claims for failure to prevent discrimination and breach of the covenant of good faith and fair dealing because those claims were based entirely on the same law and facts as her claims for employment discrimination and breach of contract. *Id*. Stefanini confirmed that those claims were identical. The Court therefore dismissed those claims as duplicative. *Id*.

This order addresses Stefanini's remaining claims: (1) employment discrimination based on gender under FEHA; (2) wrongful termination; (3) retaliation for exercising CFRA rights; (4) interference with FMLA rights; (5) retaliation; (6) breach of contract; (7) failure to pay agreed-upon wages; (8) failure to pay wages due upon termination; and (9) unfair competition.

All parties consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c). Dkt. Nos. 11, 16.

## II. LEGAL STANDARD

Summary judgment may be granted only when, drawing all inferences and resolving all doubts in favor of the nonmoving party, there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a); *Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014);

4

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Bald assertions that genuine issues of material fact exist are insufficient. *Galen v. Cnty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007).

The moving party bears the burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings, and, by its own affidavits or discovery, set forth specific facts showing that a genuine issue of fact exists for trial. Fed. R. Civ. P. 56(c); *Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999, 1004 (9th Cir. 1990) (citing *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983)). All justifiable inferences, however, must be drawn in the light most favorable to the nonmoving party. *Tolan*, 134 S. Ct. at 1863 (citing *Liberty Lobby*, 477 U.S. at 255).

## III. DISCUSSION

### A. Evidentiary Issues

On summary judgment, the Court is limited to relying only on competent and admissible evidence. *Hollingsworth Solderless Terminal Co. v. Turley*, 622 F.2d 1324, 1335 (9th Cir. 1980).

To begin, the Court notes some general concerns with the evidence provided in support of the briefing on this motion. One issue is Ms. Stefanini's citation to her own questions asked during depositions of HPE witnesses. *See generally* Dkt. No. 109. Proceeding pro se, Ms. Stefanini conducted depositions on her own behalf. During those depositions, transcripts reveal that Ms. Stefanini sometimes asked lengthy questions including facts and backgrounds about the case, some of which are highlighted in apparent support for her opposition to the motion for summary judgment. *See, e.g.*, Dkt. No. 109, Deposition of Stephen Carlock, at 6:20–7:2. Stefanini's questions are not admissible

5

evidence. A similar problem exists with exhibits used at depositions. Dkt. No. 109. Some of these exhibits appear to have been created by Stefanini for the purpose of this litigation. They are not authenticated or otherwise admissible. For example, Exhibit 15 to Adrian Hurel's deposition is a timeline of complaints Stefanini made to Stephen Carlock about MyComp issues. Exhibit 20 to Hurel's deposition is a list made by Stefanini of the commissions that she believes she was owed but not paid. These documents are not admissible as evidence to show that Stefanini made those complaints at those times or that she was owed those commissions.

One piece of evidence in particular dispute is the declaration of Robert Oliver. Dkt. No. 109, Ex. C1. HPE asks the Court to disregard the declaration in its entirety because HPE says it is inconsistent with over evidence. Dkt. No. 101 at 14, n.17. The Court finds that this criticism of the declaration goes to its weight, not its admissibility, and considers the declaration in context with the other evidence presented by both parties.

The Court decides this motion based only on the admissible evidence provided by both parties. *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1047–49 (9th Cir. 1995).

## B. Gender Discrimination, Failure to Prevent Discrimination, and Wrongful Termination

A claim for gender discrimination under FEHA first requires that the plaintiff establish a prima facie case of discrimination. *Day v. Sears Holdings Corp.*, 930 F. Supp. 2d 1146, 1176 (C.D. Cal. 2013) (citing *McDonnell Douglass Corp. v. Green*, 9411 U.S. 792 (1973)). This prima facie case requires a showing that: (1) the plaintiff is a member of a protected class; (2) the plaintiff was qualified for the position; (3) the plaintiff suffered an adverse employment action; and (4) circumstances suggest discriminatory motive. *Id*. If the plaintiff makes this prima facie showing, the defendant must provide evidence that it had non-discriminatory motives for its conduct. *Id*. at 1160. Then, the plaintiff again has the burden to prove that the defendant's proffered reasons are pretext for unlawful discrimination. *Id*. at 1161.

Here, the Court finds that Stefanini has failed to present evidence to make a prima

facie case of gender discrimination. She is a member of a protected class (female) and she suffered an adverse employment action (termination). However, she has not shown that she was qualified for the position or that the circumstances of her termination suggest discriminatory motive. The only evidence Stefanini has provided regarding her competence and performance is her own testimony. Dkt. No. 108 at 8–9. She testified that she was meeting 300% of her quota and was out-performing her peers, but that pervasive MyComp issues prevented this performance from being properly recorded. Dkt. No. 101, Stefanini Depo. at 82:4–84:3. The Court is unclear on the basis for this "300%" number—no documents or other records support it. To the contrary, HPE has provided documentary evidence that Stefanini's performance was subpar: the written warning and performance improvement plan contain a record of multiple performance issues, and subsequent emails indicate that Stefanini did not improve in accordance with the warning and plan. Carlock Decl. at ¶ 27, Ho Decl. at ¶ 2d, Ex. 6. Stefanini's opinions about her own performance are not evidence. She has therefore failed to make a prima facie case of gender discrimination because she has not shown that she was qualified for the position, especially in light of HPE's evidence that she was not. Because Stefanini has not made a prima facie case for gender discrimination, the burden does not shift to HPE to give non-discriminatory reasons for its actions.

The Court hereby GRANTS the motion for summary judgment as to Stefanini's gender discrimination claim. As discussed above, the Court also dismisses Stefanini's claim for failure to prevent gender discrimination, because it is based on identical facts and law as the gender discrimination claim.

Stefanini's claim for wrongful termination is also based on entirely the same allegations and evidence as her gender discrimination claim. Dkt. No. 25 at 6–7. That is, Stefanini claims her termination was wrongful because it was a result of gender discrimination. The Court has found that Stefanini has not provided evidence that she was discriminated against based on her gender. Therefore, the Court also GRANTS the motion for summary judgment as to the wrongful termination claim.

**C. Retaliation for Exercising CFRA Rights**

A claim under the California Family Rights Act first requires the plaintiff to make a prima facie case of retaliation. *Nelson v. United Techs.*, 74 Cal. App. 4th 597, 613 n.5 (1999). This requires showing: (1) that the plaintiff was eligible for CFRA leave; (2) that the plaintiff took CFRA leave; (3) that the plaintiff suffered an adverse employment action because she exercised her right to take CFRA leave; and (4) that there was a causal connection between the adverse employment action and the plaintiff's exercising of her CFRA rights. *Dudley v. Dep't of Transp.*, 90 Cal. App. 4th 255, 261 (2001).

Neither party disputes that Stefanini was eligible for CFRA leave, took that leave, and was terminated. The questions are whether Stefanini was terminated because of her leave and whether she has shown a causal connection between her termination and leave. Stefanini argues that she was laid off just after returning from medical leave and draws the conclusion that her layoff was retaliation for taking that leave. Dkt. No. 108 at 11–14. However, the record evidence shows that HPE's process of terminating Stefanini began before she ever requested or took medical leave. Specifically, Stephen Carlock sent an email to HR to inquire about how to terminate Stefanini in February 2016. Foley Decl. at ¶ 2, Ex. 1; Stefanini Depo. at 79:8–16; Stefanini Depo. Ex. 19. He implemented her written warning and performance plan in April 2016. *Id*. On May 23, 2016, Carlock provided his manager with a ranked list of his team by performance for the upcoming workforce reduction. *Id*. On May 24, 2016, Carlock was informed about Stefanini's request for medical leave. *Id*. Her leave began on July 18, 2016. *Id*.

Because HPE has shown that Carlock had begun inquiring about terminating Stefanini three months before her request for leave, and because he submitted his ranked list of team members' performance for workforce reduction before he had knowledge of her request for leave, Stefanini has failed to make a prima facie showing that there was a causal connection between the termination and the medical leave. *Williams v. G&K Servs., Inc.,* 774 F. App'x 369 (9th Cir. 2019). Therefore, the Court GRANTS the motion for summary judgment as to Stefanini's claim for retaliation for exercising CFRA rights.

8

**D. Interference with FMLA Rights**

To bring a claim for interference with Family and Medical Leave Act rights, the plaintiff must make a prima facie showing that: (1) she was eligible for FMLA protections; (2) her employer was covered by the FMLA; (3) she was entitled to leave under the FMLA; (4) she provided sufficient notice of her intent to take leave; and (5) her employer denied her the FMLA benefits to which she was entitled. *Alejandro v. ST Micro Elecs., Inc.*, 129 F. Supp. 3d 898, 914 (N.D. Cal. 2015).

Here, Stefanini was granted the FMLA leave that she requested. Ho Decl. at 2f, Ex. 8. Stefanini was on medical leave from July 18 through October 9, 2016. Ho Decl. at ¶ 2f, Ex. 8. She has not suggested that she ever requested any other FMLA benefits that HPE denied. If Stefanini was not denied any FMLA benefits, then she cannot make a prima facie case for interference with FMLA rights. As such, the Court GRANTS the motion for summary judgment as to Stefanini's claim for interference with FMLA rights.

**E. Retaliation**

A claim for retaliation under either the CFRA or California Labor Code § 1102.5 requires a plaintiff to make a prima facie case of retaliation by showing: (1) that she engaged in protected activity; (2) that she suffered an adverse employment action; and (3) a causal connection between the protected activity and the adverse employment action. *McVeigh v. Recology San Francisco*, 213 Cal. App. 4th 443, 468–69 (2013).

Here, Stefanini alleges that she engaged in the protected activity of complaining to HR about perceived gender-based discrimination. Dkt. No. 25 at 9–10; Foley Decl. at ¶ 2, Ex. 1. She sent an email to former Aruba President and CEO Dominic Orr about being "treated differently by manager Stephen Carlock due to being a part of a protected class" on May 5, 2016. *Id.* As discussed above, Carlock had begun emailing HR about terminating Stefanini in February 2016 and had issued her a written warning and performance improvement plan in April 2016. Because the process leading to her termination began prior to her complaint to HR, Stefanini has not shown how the complaint caused her termination. Stefanini has not put forth evidence to show a causal

9

connection between her termination and her HR complaint. The Court therefore GRANTS the motion for summary judgment as to Stefanini's retaliation claim.

### F. Failure to Pay Agreed-Upon Wages and Wages Due Upon Termination

Under California Labor Code §§ 201–202, an employer must pay an employee all wages based on her earned compensation. Stefanini claims that HPE owes her unpaid wages in the form of commissions that she earned from her sales. Dkt. No. 25 at 13.

It is unclear precisely how much Stefanini believes she is owed: in her opposition to the motion for summary judgment, Stefanini alludes to "over $10,000,000" in unpaid commissions but also states that she "believes that the total commissions she is owed is $577,500," and references commissions owed on particular accounts totaling $4,148,888.00, $237,400.00, and $27,265,068.00 each. Dkt. No. 108 at 10, 16, 18. Nevertheless, this argument in her opposition brief is not evidence. Attached to the opposition, Stefanini includes an exhibit titled "Stefanini / HPE Damages" that lists $597,067.27 in unpaid commissions, $330,000.00 in unpaid diverted commissions, and another $330,000.00 in unpaid channel commissions. Dkt. No. 109, Ex. 6. Because this document is a damages demand prepared by Stefanini for the purpose of this litigation, the Court finds that it is not admissible evidence. Stefanini attaches a similar exhibit, a timeline summary of her complaints about MyComp errors, which she also created for the case. *Id.*, Ex. 15. This exhibit is also inadmissible.

Similarly, Stefanini has not presented evidence to support her allegations about the mechanism by which her commissions were denied. Stefanini says that HPE's sales and commissions tracking system, MyComp, was not operating correctly. HPE acknowledges that "[d]uring the time in question, all HPE salespeople were unable to rely on MyComp for current data due to certain systems issues that were causing the posting of sales transaction data to be delayed." Dkt. No. 101 at 7, n.11; Foley Decl. at ¶ 2, Ex. 1. The existence of this apparent general problem with MyComp is not enough to show that Stefanini was not paid commissions she was owed. Stefanini's primary evidence for her unpaid commissions, apart from her own opinions and exhibits, is the declaration from

10

Robert Oliver. Oliver described "known issues with the HP sales commission software, MyComp," including "faulty sales commission payouts with incorrect calculations" that "resulted in exceedingly smaller commissions paid out to Ms. Stefanini than what she had calculated." Dkt. No. 109, Ex. C1, Declaration of Robert Oliver, at 2:17–19. Mr. Oliver states that his information about the MyComp issues came from a telephone conversation that he overheard between Stefanini and Stephen Carlock, where Stefanini asked Carlock for assistance with the MyComp problems. *Id*. Oliver having heard Stefanini complain about MyComp problems is not sufficient evidence to show that the issues resulted in Stefanini's commissions going unpaid.

On the other hand, HPE has provided a spreadsheet summary report of Stefanini's commissions compensation. Dkt. No. 101, Hurel Decl., Ex. 3. This report indicates that Stefanini received all sales credits owed to her, but was below quota, so was not entitled to any additional payments. Hurel Decl. at ¶¶ 13–24. Stefanini testified that she made numerous complaints to Carlock about inaccuracies in her MyComp account, but that Carlock only fixed inaccuracies in accounts for her male coworkers. Dkt. No. 101, Stefanini Depo. at 83:13–18. HPE has provided emails between Carlock, the HPE IT department, Carlock's sales team, and Stefanini about the MyComp issues. Dkt. No. 101, Stefanini Depo. Exs. 43–45. The emails show that Stefanini asked Carlock and IT for help with MyComp, and that Carlock instructed both Stefanini and the rest of his team to create spreadsheets documenting any MyComp inaccuracies. *Id*. HPE states that Stefanini never submitted any spreadsheet or otherwise filed any record of any errors; Stefanini has provided no evidence that she did so. In the end, the Court is left without any evidence beyond Ms. Stefanini's own opinion that she was owed any commissions due to MyComp errors. The evidence only shows widespread MyComp problems and Stefanini's personal complaints. Nothing shows that Stefanini was owed unpaid commissions, or how much.

Because Stefanini has not produced evidence to create a genuine dispute of material fact regarding the cause, existence, or amount of her unpaid commissions, the Court GRANTS the motion for summary judgment as to her two unpaid wage claims.

11

**G. Breach of Contract**

The essential elements of a breach of contract claim are: (1) the existence of a contract; (2) the plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) resulting damages to the plaintiff. *Coles v. Glaser*, 2 Cal. App. 5th 384, 391 (2016). An at-will employee has no underlying contract, and therefore cannot bring a claim for breach of contract or breach of the implied covenant of good faith and fair dealing. *Horn v. Cushman & Wakefield Western, Inc.*, 72 Cal. App. 4th 798, 818–820 (1999); *Sabido v. Walgreens Drugs*, Case No. 03-cv-2857-MJJ, 2005 WL 522078, at *9 (N.D. Cal. Mar. 2, 2005).

Stefanini was an at-will employee. Carlock Decl. at ¶ 9, Ex. A; Hurel Decl. at ¶ 16, Ex. 4. She therefore cannot bring a breach of contract claim for her termination. *Horn*, 72 Cal. App. 4th 798, 818–20 (1999). Stefanini's breach of contract claim is also based upon her unpaid wages. As the Court discussed in Section F above, Stefanini has not provided admissible evidence to create a genuine dispute of fact regarding her unpaid wages. Therefore, the Court GRANTS the motion for summary judgment as to Stefanini's breach of contract claim. As discussed previously, the Court also dismisses the breach of the covenant of good faith and fair dealing claim, because it is based on identical facts and law as the breach of contract claim. Furthermore, if there is no evidence of a contract, there can be no implied covenant of good faith and fair dealing adjoining the contract.

**H. Unfair Competition**

A claim for unfair competition under California Business & Professions Code § 17200 is based on a defendant's unlawful, unfair, or fraudulent business act or practice. A plaintiff bringing a UCL claim must show: (1) economic injury; and (2) that the economic injury was a result of the defendant's unfair business practice. *Prescott v. Rady Children's Hosp.-San Diego*, 265 F. Supp. 3d 1090, 1103 (S.D. Cal. 2017).

Stefanini's UCL claim is based on her gender discrimination and wrongful termination claims. Dkt. No. 25 at ¶ 117. The Court has granted summary judgment as to those claims in this order. Stefanini has not established an unfair business practice by

12

HPE. Therefore, the Court also GRANTS the motion for summary judgment as to the UCL claim.

## IV. CONCLUSION

The Court FINDS no genuine disputes of material fact based on the admissible evidence provided by the parties in support of their briefing on this motion. Even viewing the admissible evidence in the light most favorable to Ms. Stefanini, the Court FINDS that her claims fail as a matter of law. The Court GRANTS HPE's motion for summary judgment. This case is hereby DISMISSED.

**IT IS SO ORDERED.**

Dated: January 22, 2020

_____
NATHANAEL M. COUSINS
United States Magistrate Judge